# Cynthia H. Decker, Appellant, *v.* The Lehigh Valley Railroad Company.

*Negligence—Railroads—Crossing—" Stop, look and listen."*

The conditions which render a railroad crossing dangerous do not authorize a departure from the rule which requires a person approaching it to stop, look and listen before driving upon it. The nonobservance of the rule is negligence per se. To moderate the pace of a team in approaching a crossing is not compliance with the rule.

In an action against a railroad company to recover damages for the death of plaintiff's husband killed at a crossing, it appeared that the deceased was driving a wagon at the time of the accident. The only point in the road upon which he was driving from which the railroad could be seen in the direction from which the train came which struck the deceased, was about one hundred and twenty-five feet from the railroad, and from this point a train could be seen from a point from six hundred to twelve hundred feet above the crossing to a point from two hundred to four hundred feet above it. The point at which the train could first be seen to the point at which it was lost sight of until it reached the crossing, was not ascertained by actual measurement. From the point on the road at which the train could be seen there was no other point at which it could be seen, until the horses' front feet were on the track. The evidence submitted by the plaintiff showed that the deceased did not stop, look and listen at any point, and that when he was near the crossing the gates were lowered from their upright position to an angle of forty-five degrees before the deceased passed under them. The bells upon the gates were also rung. *Held,* that a nonsuit was properly entered.

Argued Feb. 26, 1897. Appeal, No. 35, Jan. T., 1897, by plaintiff, from order of C. P. Wyoming Co., Jan. T., 1894, No. 22, refusing to take off nonsuit. Before WILLIAMS, Mc-COLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before DUNHAM, P. J.

At the trial it appeared that plaintiff's husband, Lewis W. Decker, was killed at the Water street crossing of the defendant's railroad in Pittston, on December 24, 1892. At the time of the accident the deceased was driving a team of horses hitched to an empty wagon, westward along Water street. The train that killed Decker was due at Pittston at 12:15 P. M., coming from the north. It was about forty minutes late, and the acci-

dent occurred at about 12:55 P. M. Decker was first seen to turn into Water street from Main street. Water street at this place is slightly down grade from Main street to the crossing. The circumstances of the accident are stated in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*John A. Sittser* and *Paul J. Sherwood*, for appellant.—In no view of this case can the deceased be charged with that degree of negligence which operates to excuse the negligence of the defendant: 1 Addison on Torts, sec. 568, and *n*; Lindsey v. Town of Danville, 45 Vt. 72; Stiles v. Geesey, 71 Pa. 439; Hackett v. Middlesex Mfg. Co., 101 Mass. 101.

A motion for a nonsuit is in effect a demurrer to plaintiff's evidence, and every reasonable inference which a jury might draw must be taken: Fisher v. Ry. Co., 131 Pa. 292; Corbalis v. Newberry Twp., 132 Pa. 9; Maynes v. Atwater, 88 Pa. 496; Miller v. Bealor, 100 Pa. 583; McGrann v. Pittsburg & Lake Erie R. R. Co., 111 Pa. 171; Hill v. Nation Trust Co., 108 Pa. 1; School Furniture Co. v. Warsaw School District, 122 Pa. 494; Hoffmeister v. Pa. R. R. Co., 160 Pa. 568; Wellman v. Boro. of S. Depot, 167 Pa. 239; Dampman v. Pa. R. R. Co., 166 Pa. 520; Longenecker v. Penna. R. Co., 105 Pa. 328; Bradwell v. Pitts., etc., Pass. Ry. Co., 139 Pa. 404; Pass. Ry. Co. v. Boudrou, 92 Pa. 475; B. & O. R. R. v. Sulphur Spring Independent School Dist., 96 Pa. 65; Baughman v. Shenango, etc., R. R., 92 Pa. 335; 4 Am. & Eng. Ency. of Law, 19; Kentucky Cent. R. R. v. Thomas, 70 Ky. 160.

The failure to stop, look and listen, must have contributed to cause the injury, else it will not prevent a recovery for the injury: Fairbanks v. Kerr, 70 Pa. 86; Township of West Mahanoy v. Watson, 112 Pa. 574; West Mahanoy Township v. Watson, 116 Pa. 344; Gould v. McKenna, 86 Pa. 397; Stiles v. Geesey, 71 Pa. 439; Hoag v. Lake Shore, etc., R. R., 85 Pa. 293; Oil Creek & Allegheny River Ry. Co. v. Keighron, 74 Pa. 316; Penna. R. Co. v. Kerr, 62 Pa. 353; Penna. Canal Co. v. Bently, 66 Pa. 30; Patterson's Ry. Acc. Law, sec. 178; Green-

leaf v. Ill. Cent. R. R. Co., 29 Ia. 14; McGrath v. N. Y. Cent., etc., R. R., 59 N. Y. 468; Grant v. City of Erie, 69 Pa. 420; Phila. & Reading R. R. v. Killips, 88 Pa. 409.

Proof that the deceased did stop, look and listen is no part of plaintiff's case. The presumption is he did, and the burden is upon the defendant to show that he did: Schum v. R. R., 107 Pa. 8; Penna. R. Co. v. Weiss, 87 Pa. 447; Penna. R. Co. v. Miller, 87 Pa. 395; Gibbons v. Ry. Co., 155 Pa. 280; New-hard v. R. R., 153 Pa. 422; Derk v. Ry. Co., 164 Pa. 243; Baker v. N. E. Borough, 151 Pa. 234; Feay v. Decamp, 15 S. & R. 227; Corbalis v. Newberry Twp., 135 Pa. 9; Penna. R. Co. v. Weber, 76 Pa. 157; Kohler v. R. R., 135 Pa. 346; Ely v. Ry., 158 Pa. 237; Philpott v. Penna. R. Co., 175 Pa. 570; Whitman v. Penna. R. Co., 156 Pa. 175; McNeal v. Ry., 131 Pa. 184; Lake Shore, etc., R. R. v. Frantz, 127 Pa. 297; Mc-Gill v. Ry., 152 Pa. 331; Langan v. St. Louis, etc., Ry., 72 Mo. 392.

Decker was lured into danger: Penna. R. Co. v. Ogier, 35 Pa. 60; Penna. R. Co. v. Ackerman, 74 Pa. 265; Chicago & Eastern Ill. R. R. v. Hedges, 105 Ind. 398.

*F. W. Wheaton*, with him *C. E. Terry*, for appellee.—If the plaintiff had offered no evidence upon the question of stopping, then, until rebutted either by the circumstances or by evidence, there would have been a presumption that he did his duty. If, however, the facts were undisputed that the deceased did not stop at a proper place to look and listen, it was the duty of the court to declare the law: Urias v. P. R. R., 152 Pa. 326; Whitman v. Penna. R. Co., 156 Pa. 175.

Open gates do not relieve the traveler from the imperative duty which the law puts upon him, to stop, look and listen: P. & R. R. R. Co. v. Killips, 88 Pa. 405; Lake Shore, etc., R. R. v. Frantz, 127 Pa. 297; Matthews v. P. & R. R. R., 161 Pa. 28; Greenwood v. R. R., 124 Pa. 572.

In the face of the positive testimony of an eyewitness that Decker did not stop at Cron alley, the presumption that he did stop was rebutted in the plaintiff's own case, and the learned judge of the court below was right in withdrawing it from the jury and in directing a compulsory nonsuit: Reading & Columbia R. R. v. Ritchie, 102 Pa. 434; Penna. R. Co. v. Mooney,

126 Pa. 244; Connerton v. Canal Co., 169 Pa. 341; Cleveland
& Pittsburg R. R. v. Rowan, 66 Pa. 393; McCully v. Clarke,
40 Pa. 406; Central R. R. v. Feller, 84 Pa. 226; D., L. & W.
R. R. v. Cadow, 120 Pa. 559; Myers v. B. & O. R. R., 150 Pa.
388; Aiken v. Penna. R. Co., 130 Pa. 395; Ely v. Ry., 158 Pa.
236; Butler v. Gettysburg, etc., R. R., 126 Pa. 160; Burd v.
Phila., W. & B. R. R., 25 W. N. C. 250; Penna. R. Co. v. Beale,
73 Pa. 504.

OPINION BY MR. JUSTICE McCOLLUM, May 27, 1897:

Between Main street and the crossing on which the plaintiff's
husband received the injury that resulted in his death the only
place from which a train coming from the north could be seen
for any appreciable distance was where Cron alley connected
with Water street. It was therefore the place at which persons
intending to drive across the railroad usually stopped, looked
and listened to ascertain whether a train was approaching from
that direction. It was near the center of Water street about
125 feet east of the railroad and from it, according to the vari-
ous estimates of the plaintiff's witnesses, a train coming from
the north could be seen from a point from 600 to 1200 feet
above the crossing to a point from 200 to 400 feet above it.
Unfortunately the distance from the point where the train could
be first seen to the point where it was lost sight of until it
reached the crossing was not ascertained by actual measurement.
Between Cron alley and the railroad there was no point from
which a train coming from the north could be seen until the
horses' front feet were on the track. But the conditions which
render a crossing dangerous do not authorize a departure from
the rule which requires a person approaching it to stop, look
and listen before driving upon it. The nonobservance of the
rule is negligence per se and the cause of many casualties which
adherence to it would have avoided. A relaxation of the rule
through sympathy for those who suffer from the violation of it
is not in the interest or conducive to the security of travelers
on the highways which cross the railroads or of travelers in
the trains of the latter. On the contrary, a strict enforcement
of the rule is promotive of the safety of both. In the case in
hand the evidence is clear and convincing that the decedent
did not stop, look and listen at Cron alley or at any place on

Water street between Main street and the crossing, but that, without observance of the rule, he deliberately attempted to cross the track, and that the immediate consequence of his attempt was the collision in which he lost his life. To moderate the pace of his team on approaching the crossing was not compliance with the rule nor in any sense an acceptable substitute for it. When near to the crossing he must have seen and heard what was clearly indicative of the approach of a train ; namely, the lowering of the gates and the ringing of the bells upon them. James Ehret and Joseph Hileman who were in the office of the Farnham House waiting for the train heard the bells ring and noticed that the gates were lowered from their upright position to an angle of forty-five degrees, before the deceased passed under them. It is plain therefore that this warning of the approach of a train was disregarded by him.

Henry B. Stark testified positively that the deceased did not stop at any place on Water street between Main street and the crossing. The attempt to discredit his testimony on the ground of a substantial difference between it and his testimony in the suit by the plaintiff against the Philadelphia & Reading Railroad Company for the same occurrence was a failure. It is obvious that there was no merit in the claim that the plaintiff was surprised by his testimony in this case, or that there was any material variance between it and his former testimony. The learned trial judge said in his opinion refusing to take off the nonsuit that Judge RICE held in the former case " that the evidence clearly established the fact that the deceased did not stop, look and listen as required to do." The testimony of Robert K. Hileman did not show that the deceased stopped, looked and listened. The most that can be made of it is that he slackened the gait of his team when near to the crossing.

As the evidence submitted by the plaintiff affirmatively shows that he did not comply with the rule prescribed for the government of persons about to drive across a railroad, there is no room for a presumption that he complied with it. No circumstances appear in the case to justify or excuse a departure from this rule. On the plaintiff's own showing it was the duty of the court, on the motion of the defendant, to enter the nonsuit.

Judgment affirmed.